IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ROBIN A. COLEMAN,                    )
                                     )
                  Plaintiff,         )
                                     )
vs.                                  )        Case No. 07-1217-MLB
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of                      )
Social Security,                     )
                                     )
                  Defendant.         )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

     The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

     Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

     On March 17, 2007, administrative law judge (ALJ) Edmund C.
Werre issued his decision (R. at 14-22).  Plaintiff alleged that
her disability began on December 20, 2004 (R. at 14).  Plaintiff
meets the insured status requirements for disability insurance
through December 31, 2009 (R. at 16).  At step one, the ALJ found

that plaintiff had not engaged in substantial gainful activity
since her alleged onset date of December 20, 2004 (R. at 16).  At
step two, the ALJ determined that plaintiff had the following
severe impairments: left tibial plateau fracture status post open
reduction and internal fixation with hardware, degenerative disc
disease of the lumber spine and early degenerative changes of the
right knee (R. at 16).  At step three, the ALJ determined that
plaintiff's impairments do not meet or equal a listed impairment
(R. at 16-17).  After establishing plaintiff's RFC (R. at 17),
the ALJ found at step four that plaintiff is able to perform past
relevant work as a an administrative assistant (R. at 21).   In
the alternative, at step five, the ALJ, based on vocational
expert (VE) testimony, found that there are a significant number
of other jobs in the national economy which plaintiff is capable
of performing (R. at 21-22).  Therefore, the ALJ concluded that
plaintiff is not disabled (R. at 22).

**III.  Are the RFC findings of the ALJ supported by substantial
evidence?**

     The ALJ found that plaintiff has the RFC capacity to lift or
carry 10 pounds frequently and 20 pounds occasionally.  Plaintiff
has the ability to sit about 6 hours and stand and/or walk for 2
hours in an 8 hour work day with position alteration every 30
minutes (R. at 17).  The ALJ's RFC findings parallel the lifting
and carrying limitations, and the sitting and standing and/or

walking limitations set forth in the state agency RFC assessment (R. at 17, 189); however, the ALJ added an additional limitation of requiring a position change every 30 minutes which is not mentioned in the state agency medical assessment.  The ALJ noted that plaintiff reported the need to alternate positions at 30 minute intervals, the ability to stand an hour a day, walk short distances, and lift 20-30 pounds (R. at 19).  Plaintiff testified that she can sit for 20-30 minutes at a time, can stand for no more than 1 hour, can walk around the house and get in the car, but cannot walk 1 block, and can lift about 20, or maybe 30 pounds; however, when asked how often she lifts that much, she indicated "not often at all"  (R. at 317-318).

Plaintiff had left leg surgery in December 2004 (R. at 167). The state agency RFC assessment, prepared by Dr. Cowles and upon which the ALJ relied in making his own RFC findings, was prepared on July 13, 2005 (R. at 195).  The ALJ stated that although Dr. Cowles had not seen the plaintiff, the assessment provided specific reasons for the opinions set forth about plaintiff's RFC, and the opinions were grounded in the evidence.  The ALJ also stated that evidence subsequently received into the record did not provide any new or material information that would significantly alter the RFC findings of the ALJ (R. at 20).

The state agency RFC assessment by Dr. Cowles provides this brief explanation for his findings:

On 12/20/2004 39 year old women sustained a
multiple significantly comminuted
intraarticular fracture of the tibial plateau
with impaction displacement along with
lipohemarthrosis and comminuted proximal
fibular fracture. She continues with pain and
swelling. Most recent X-rays in 4/2005 show
continued blurring of fracture line, however,
in good position. Records of the same date
note that C will need arthoscopic debridement
and manipulation sometime in the future.
Fracture is continuing to heal and DDS
projects that C will be capable of this RFC
prior to 12 months after onset date.

(R. at 189-190).  Later, Dr. Cowles stated the following:

Claimant's alleged limitations currently are
credible, however, it is not credible that
limitations will last 12 months.

(R. at 193).  Dr. Cowles offered no clear explanation for his

finding that plaintiff's limitations, although credible in July

2005, will not remain credible for 12 months after her surgery in

December 2004, other than to state that the fracture is

continuing to heal.

     The only medical records available for Dr. Cowles were

medical records from Wesley Medical Center from December 20, 2004

through June 14, 2005 (R. at 2, 154-187).  Subsequent to the

state agency RFC assessment by Dr. Cowles, medical records dating

from January 27, 2005 through January 11, 2007 were added to the

record (R. at 3).  These consist of 84 pages of medical records

from Wesley Medical Center, Wesley Clinic, Cypress Orthopaedic

Sports Medicine, Via-Christi St. Francis Regional Medical Center,

and the Hunter Health Clinic (R. at 202-268, 272-288). `

Also included in the record after the RFC assessment by Dr. Cowles on July 13, 2005 were the following medical source RFC opinions by treating physicians:

(1) Dr. Morishige, physical RFC assessment, Oct. 4, 2005

(2) Dr. Worley, mental RFC assessment, Oct. 17, 2005

(3) Dr. Worley, physical RFC assessment, Nov. 15, 2005

(4) Dr. Barton,[1] physical RFC assessment, Sept. 26, 2006

(R. at 196-201, 270-271).  The ALJ discussed the above opinions as follows:

> Dr. Morishige provided a residual functional assessment in October 2005 noting the ability to lift 10 pounds occasionally, stand or walk about 1 hour a day with sitting 8 hours in an 8 hour work day with the need to avoid climbing, stooping, kneeling, crouching, crawling and exposure to hazards and heights (exhibit 3F). Dr. Morishige last saw the claimant in December 2005, one year from the injury. X-rays obtained at that time noted healing of the tibial plateau with only early osteoarthritic changes (exhibit 7F/9)...
>
> A mental assessment was completed by Paula Worley, M.D. on October 17,2005 and a physical assessment completed on November 15, 2005 (exhibit 4F, 5F). Dr. Worley is associated with Hunter Health Clinic (exhibit 8F/5-6, 12F/7-1l). The doctor indicated the claimant could only stand or walk less than 1 hour in an 8 hour day and sit for 2 hours in an 8 hour day with the need to lie down for 1 hour every 3 hours (exhibit 5F). She also

------

[1]The name on the RFC form is unclear (R. at 270-271). Plaintiff and defendant refer to the physician as Dr. Barton (Doc. 7 at 5; Doc. 12 at 7-8).  The ALJ referred to the physician as Dr. Baker (R. at 19), and later as Dr. Barker (R. at 20).

reported pain resulting in depression with
marked to extreme limitations in 8 out of 20
areas of function (exhibit 4F). There were no
supporting records in file to support this
assessment. Dr. Worley only saw the claimant
twice before completing the residual
assessment forms. At the contact on September
13,2005 the claimant reported low back pain
with exercises recommended. She reported some
depression with samples of Cymbalta provided
(exhibit 12F/10-11). Dr. Worley noted that
the claimant was trying to get a medical
card. Therefore, this residual functional
assessment is given little weight as there
are no supporting medical records. The
remaining medical records find no complaints
of depression after this residual functional
assessment was completed (exhibit 12F).

Another residual functional assessment was
completed by Dr. Baker at Hunter Health
Clinic dated September 26, 2006. He limited
the claimant to lifting 5 pounds, standing or
walking less than 1 hour in an 8 hour day,
and sitting less than 1 hour in an 8 hour day
with no climbing, stooping, kneeling,
crouching or crawling (exhibit 11F). This
assessment is also given little weight as it
appears to be completed based on the
claimant's reports of limitations rather than
supporting medical records. Dr. Baker saw the
claimant on July 27, 2006 and September 2,
2006 (exhibit 12F/4-6). He found no new
complaints and recorded no problems. He did
indicate that the claimant wanted disability
paperwork completed. Her medication was
continued which was Ibuprofen in July 2006
and Flexeril in September 2006...

As for the opinion evidence, as noted above,
the claimant has requested and received
rather restrictive residual functional
assessments from medical sources. However,
these assessments are not supported in a
review of the medical evidence. Dr. Morishige
provided a residual functional assessment for
a range of sedentary activities less than 12
months from the injury including the ability

to sit for 8 hours a day (exhibit 3F). Dr.
Worley also provided restrictive residual
functional assessments less than 12 months
from injury as noted above. These included
extreme mental limitations not reflected in
the medical records (exhibit 4F, 5F).
Finally, a residual functional assessment was
completed by Dr. Barker of Hunter Health
Clinic in September 2006. This is given
little weight as it appears to be completed
in part based on objective complaints without
subjective evidence. Dr. Barker noted the
claimant was limited to lifting 5 pounds and
could stand, walk or sit less than 1 hour a
day. These limitations do not add to an 8
hour day. These limitations are not reflected
in the medical evidence and are found to be
conclusory and not credible. In addition, the
claimant herself testified to the ability to
lift 20 to 30 pounds with [sic] is contrary
to the doctor's assessment. A review of the
treatment notes at Hunter Health Clinic does
not indicate significant concerns. In
September 2006 the claimant had no complaints
with a continuation of medication.

(R. at 18, 18-19, 20).

The ALJ's RFC findings rely, in large part, on the opinions
of Dr. Cowles, who prepared a state agency RFC assessment on July
13, 2005.  Dr. Cowles only provided a very brief narrative in
support of his check-the-box RFC findings, and he offered no
clear explanation for his finding that plaintiff's limitations,
although credible in July 2005, will not remain credible for a 12
month period after her surgery, other than to note that her
fracture is continuing to heal.  On the other hand, three
treating physicians offered opinions on October 4, 2005, November
15, 2005 and September 26, 2006 that plaintiff had greater

physical limitations than those found by the ALJ.

First, courts have repeatedly held that a state agency assessment using a check-the-box evaluation form, unaccompanied by thorough written reports or persuasive testimony is not substantial evidence. <u>Fleetwood v. Barnhart</u>, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007). Dr. Cowles offered no clear explanation for finding that plaintiff's limitations were credible as of July 2005, but would not remain credible for a 12 month period after her surgery in December 2004, other than to note that her fracture is continuing to heal. Dr. Cowles did not provide an opinion as to plaintiff's present RFC based on the medical record to date, but was merely offering a prediction or projection of what he thought plaintiff's RFC would be sometime before December 2005. By contrast, physicians who had examined and treated the plaintiff consistently found that plaintiff had greater RFC limitations in October 2005, November 2005, and September 2006. The opinions of treating physicians who have seen a claimant over a period of time are given greater weight than the views of a physician who has only reviewed the medical record and never examined the claimant. The opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004).

Second, the only medical records available for Dr. Cowles

were medical records from Wesley Medical Center from December 20, 2004 through June 14, 2005 (R. at 2, 154-187).  Subsequent to the state agency RFC assessment by Dr. Cowles (dated July 13, 2005), medical records dating from January 27, 2005 through January 11, 2007 were added to the record (R. at 3, 202, 221, 240, 246, 257, 272, 286).  These consist of 84 pages of medical records from Wesley Medical Center, Wesley Clinic, Cypress Orthopaedic Sports Medicine, Via-Christi St. Francis Regional Medical Center, and the Hunter Health Clinic (R. at 202-268, 272-288).  These records include diagnostic imaging on January 11, 2007 indicating mild scoliosis and degenerative disc disease at L5-S1 (R. at 287-288).  Also included in these records are multiple visits by plaintiff for knee pain, and in a few cases, for back pain (R. at 225, 228, 229, 242, 248, 273, 274, 282).  On August 15, 2006, diagnostic imaging of the right knee indicated minimal spurring of the patellofemoral joint which may represent early degenerative changes (R. at 283).  Finally, the medical source opinions by three treating physicians were added to the record after the RFC assessment by Dr. Cowles.  Dr. Cowles did not have any of these medical records before him when he offered his RFC opinions on July 13, 2005.

The ALJ stated that the evidence received into the record after Dr. Cowles provided his opinions regarding plaintiff's RFC did not provide any new or material information that would

significantly alter his RFC findings (R. at 20). This finding by
the ALJ is not supported by the evidence. After Dr. Cowles
provided his opinions, two years of medical treatment records
were added, including RFC opinions from 3 treating physicians.
The two years of additional medical records, including the RFC
opinions from three treating physicians, treatment for knee
and/or back pain, and diagnostic imaging results on the spine and
right knee are clearly new and material information quite
relevant to a determination of plaintiff's RFC.

Third, the ALJ found that the medical records and evidence
do not support the findings of the three treating physicians.
However, the ALJ must not consider the opinions of Dr. Morishige,
Dr. Worley and Dr. Barton in isolation, but they must be examined
in light of the entire evidentiary record, including the opinions
and assessments of the other treatment providers. The court is
concerned with the necessarily incremental effect of each
individual medical report or opinion by a treatment provider on
the aggregate assessment of the evidentiary record, and, in
particular, on the evaluation of reports and opinions of other
treatment providers, and the need for the ALJ to take this into
consideration. Lackey v. Barnhart, 127 Fed. Appx. 455, 459 (10th
Cir. April 5, 2005).

Fourth, the ALJ gave little weight to the opinion of Dr.
Barton (aka Dr. Barker, Dr. Baker) because his assessment

13

"appears to be based on the claimant's reports of limitations rather than supporting medical records" and appears to be based in part on subjective complaints without objective evidence[2] (R. at 19, 20). In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

More recently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

---

[2]The ALJ's decision states that he gave little weight to Dr. Barker's opinions because they appear to have been completed "in part based on objective complaints without subjective evidence" (R. at 20). However, based on common sense and the ALJ's earlier comments, the court finds that the ALJ intended to say that Dr. Barker's opinions were based in part on subjective complaints without objective evidence.

The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

121 Fed. Appx. at 823-824.

A review of the medical records of of Dr. Barton of the Hunter Health Clinic referenced by the ALJ (R. at 275-277, exhibit 12F/4-6; R. at 270-271) does not provide any evidence that Dr. Barton relied only on claimant's subjective complaints in setting forth his RFC opinions.  Dr. Barton's RFC evaluation indicates that his findings are based on medical history, clinical findings (such as examinations), diagnosis, and treatment prescribed (R. at 271).  Nothing in the record contradicts or disputes the statement by Dr. Barton indicating the basis for his findings.

15

Dr. Barton certainly observed and had the opportunity to examine plaintiff in his contacts with her on July 27, 2006, September 2, 2006 and September 26, 2006 (R. at 275-277).  He had available to him the medical records from Hunter Health Clinic.  Plaintiff had been a patient at the Clinic since September 13, 2005 (R. at 3, 282).  Thus, as in <u>Victory</u>, Dr. Barton's opinions may well have been based on his first-hand examination and/or observation of the plaintiff, and not merely on plaintiff's subjective complaints.

Fifth, the ALJ found that the opinions of the three treating physicians are not supported by the medical evidence, are conclusory, and thus not credible (R. at 20).  Admittedly, all three RFC evaluations by the three treatment providers provide little or no narrative explanation for their opinions.  In the case of <u>Robinson v. Barnhart</u>, 366 F.3d 1078, Dr. Baca, plaintiff's treating psychiatrist, completed an assessment of the claimant's mental ability to do work-related activities.  Dr. Baca concluded that plaintiff's limitations as set forth in the assessment were severe enough to preclude plaintiff from any employment.  366 F.3d at 1081.  The court held that the ALJ's statement that Dr. Baca's records did not give a reason for his opinion that claimant is unable to work triggered the ALJ's duty to seek further development of the record before rejecting his opinion.  366 F.3d at 1084.  The court further held:

16

> If evidence from the claimant's treating
> doctor is inadequate to determine if the
> claimant is disabled, an ALJ is required to
> recontact a medical source, including a
> treating physician, to determine if
> additional needed information is readily
> available. See 20 C.F.R. §§ 404.1512(e)(1)
> and 416.912(e)(1) ("We will seek additional
> evidence or clarification from your medical
> source when the report from your medical
> source contains a conflict or ambiguity that
> must be resolved, the report does not contain
> all the necessary information, or does not
> appear to be based on medically acceptable
> clinical and laboratory diagnostic
> techniques."); see also McGoffin, 288 F.3d at
> 1252 (holding ALJ had obligation to recontact
> treating physician if validity of his report
> open to question). The responsibility to see
> that this duty is fulfilled belongs entirely
> to the ALJ; it is not part of the claimant's
> burden. White v. Barnhart, 287 F.3d 903, 908
> (10th Cir.2001).

366 F.3d at 1084.  The court in Robinson then stated that if the

ALJ concluded that the treating physician failed to provide

sufficient support for his conclusions about plaintiff's

limitations, the severity of those limitations, the effect of

those limitations on her ability to work, or the effect of

prescribed medication on her ability to work, the ALJ should have

recontacted the treatment provider for clarification of his

opinion before rejecting it.  366 F.3d at 1084.  In addition, SSR

96-5p states the following:

> Because treating source evidence (including
> opinion evidence) is important, if the
> evidence does not support a treating source's
> opinion on any issue reserved to the
> Commissioner and the adjudicator cannot
> ascertain the basis of the opinion from the

17

> case record, the adjudicator must make "every
> reasonable effort" to recontact the source
> for clarification of the reasons for the
> opinion.

1996 WL 374183 at *6.

When the ALJ concludes that a treating physician has failed
to provide sufficient support for his conclusions about a
client's RFC, the ALJ should recontact those treating physicians
before rejecting those opinions.  The ALJ in this case, despite
finding that the assessments by the three treating physicians
were not supported by the medical records and were conclusory,
failed to recontact any of the three treating physicians for
clarifications of their opinions before rejecting them.

Finally, the court does acknowledge that the ALJ discounted
the opinions of the treatment providers that plaintiff's ability
to lift and or carry was 10 pounds or less (R. at 196, 200, 270)
based on plaintiff's testimony that she could lift 20 or maybe 30
pounds, but when asked how often she lifts that much, she
indicated "not often at all" (R. at 318).  The ALJ can certainly
give greater weight to a claimant's testimony when it conflicts
with an RFC assessment from a treating physician.

The ALJ also gave some weight to how often the treating
physicians had seen the plaintiff before offering their opinions,
which is a legitimate basis for determining the weight to give a
treating source opinion.  20 C.F.R. § 1527(2)(i).  However, the
ALJ indicated that Dr. Worley had only seen plaintiff twice

18

before completing his assessment forms (R. at 19).[3]  The mental

RFC assessment was prepared on October 17, 2005 (R. at 198-199).

However, the physical RFC assessment was prepared on November 15,

2005 (R. at 200-201).  The records from Hunter Health Clinic

identified by the ALJ as from Dr. Worley show that plaintiff saw

her on September 13, 2005, October 17, 2005 and November 15, 2005

(R. at 280-282).  Thus, Dr. Worley had seen the plaintiff three

times when he filled out the physical RFC assessment form.

     The ALJ also indicated that Dr. Barton (aka Dr. Baker) saw

the plaintiff on July 27, 2006 and September 2, 2006 (R. at 19).

However, the medical records identified as being from Dr. Barton,

exhibit 12F/4-6, indicate three contacts, July 27, 2006,

September 2, 2006 and September 26, 2006 (R. at 275-277).

Furthermore, the ALJ must take into consideration that Dr.

Barton, as a physician at the Hunter Health Clinic, had available

to him the medical records of the Clinic.  Plaintiff had been a

patient of the Clinic since September 13, 2005 (R. at 282).

     In summary, the court finds that the ALJ's RFC findings,

based largely on the RFC assessment provided by Dr. Cowles, a

non-examining physician, is not supported by substantial

evidence.  Dr. Cowles had medical records only for a six month

_____

     [3]The ALJ referenced 12F/7-11, or R. at 278-282, as records
from Dr. Worley of Hunter Health Clinic (R. at 18).  Although the
signatures on the medical records are very difficult to identify,
the court will assume that these records are from Dr. Worley,
based on the representation by the ALJ.

period, and was projecting what her RFC would be sometime in the future.  He gave little explanation for this opinion, other than to indicate that plaintiff's fracture is continuing to heal.  Dr. Cowles offered his opinion before the vast majority of medical records were added to the file, and prior to the inclusion of two years of medical treatment records from numerous treatment providers.  On the other hand, three treating physicians, who had examined and treated the patient in 2005 and 2006, prepared RFC assessments based on their own observations and the medical records available to them.  The ALJ erroneously considered the opinions of the three treatment providers in isolation, instead of examining them in light of the opinions of the other treatment providers and the entire medical record.  The ALJ discounted the opinion of Dr. Barton by erroneously concluding that his opinions were based on claimant's subjective complaints and not on objective evidence.  Finally, the ALJ erred by failing to recontact the three treating physicians after rejecting their RFC limitations because they were not reflected in the medical evidence, were conclusory, and were not credible.[4]  The court

---

[4]In the case of <u>Neil v. Apfel</u>, 1998 WL 568300 at *4 (10th Cir. Sept. 1, 1998), the court stated that an ALJ may not substitute the conclusory and unsupported opinion of a treating physician that a claimant cannot work with the even more conclusory and unsupported opinion of an examining physician that the claimant can work.  In the case before the court (Coleman), the ALJ erred by giving little weight to the conclusory opinions of three treating physicians, but inexplicably gave great weight to the opinion of one physician who never saw or examined the

finds that these errors, in combination, warrant a remand of the case for further hearing.  Upon remand, the ALJ shall make new credibility and RFC findings after giving proper consideration to the medical records and medical source opinions, as set forth above.[5]

**IV.  Did the ALJ err at step two when he failed to find that plaintiff's depression was not a severe impairment?**

The burden of proof at step two is on the plaintiff.  <u>See</u> <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); <u>see</u> <u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[6]  <u>Williams</u>,844

_____

plaintiff, who only had a small portion of the medical records before him, and who, with very little explanation, was projecting what he believed plaintiff's RFC would be at a future date.

[5]On remand, the ALJ should also consider the various postural, manipulative, and environmental limitations included in the RFC opinions of Dr. Cowles, and the three treating physicians.  Without explanation, the ALJ failed to include any of these limitations in his RFC findings.

[6]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling,

F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. § 404.1513(d)(1),

---

reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

§ 416.913(d)(1).

The ALJ found that depression was only reflected twice in treatment notes during a two month period,[7] and that plaintiff only required medication for a couple of weeks (R. at 16). Therefore, he concluded that depression was not a severe impairment.  Plaintiff testified that she took the medication for a couple of weeks, but quit taking it because it was not helping (R. at 327).

Unless an impairment results in death, it must have last or must be expected to last for a continuous period of at least 12 months.  20 C.F.R. § 404.1509.  Plaintiff provided no medical evidence that she suffered from a severe impairment of depression for at least 12 months.  The ALJ found that the medical records only show an indication of depression for a 2 month period (September-October 2005).  Plaintiff did not meet her burden of proving that her depression was a severe impairment for 12 months.  Thus, the ALJ's finding that plaintiff's depression was not a severe impairment is supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

---

[7]The medical records, by Dr. Worley, are dated September 13, 2005 and October 17, 2005 (R. at 281-282).

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on March 25, 2008.

> s/John Thomas Reid
> JOHN THOMAS REID
> United States Magistrate Judge